IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

ESTATE OF JAMES PETER RUSH,　　　　　Case No. _____
JACQUELINE FINN, as PERSONAL
REPRESENTATIVE,
　　　Plaintiff,

v.

HON. BOBBY HADDOCK, as Sheriff of
Washington County and individually, and
JONATHAN RACKARD, and FRANK
STONE, individually,
　　　Defendants.

**COMPLAINT FOR DAMAGES**

Plaintiff sues Defendants and alleges as follows:

**Introduction**

1. This action is brought pursuant to 42 U.S.C. §§ 1983 and 1988 to redress violations of the Constitution of the United States and under state law.

2. On or about January 23, 2008, about 12:45 a.m., a frail and elderly Washington County resident, James Rush, age 79, using an automatic redial phone he had recently been given, called 911, ostensibly to report a small theft.

3. Actually, Mr. Rush suffered from Chronic Obstructive Pulmonary Disease (COPD), had a premonition that he was going to die that night, was desperately afraid, and requested that an officer come out and check on him.

4. After several calls, Sheriff's Corporal Jonathan Rackard undertook to check on

Mr. Rush's well-being and went to his home.

5. Corporal Rackard found an elderly man with oxygen tanks clearly in evidence, who was weak and confused and could hardly move without help. Rackard scolded Rush for calling 911 and said he would be arrested if he called again.

6. Because of his desperation and confusion and because his phone was set to automatically redial the number, 911, Rush did again call 911 and Corporal Rackard, on being informed of this, sent Deputy Frank Stone to arrest him.

7. Although it was clear Rush was seriously ill and should have been taken to a hospital, Stone took Rush to the Washington County Jail, where, without any special provision for his supervision and care, within 25 minutes, Rush suffered a heart attack and he died shortly afterwards.

## Jurisdiction and Venue

8. The jurisdiction of the Court is founded upon 28 U.S.C. § 1343(3) and (4).

9. The Plaintiff's claim for relief is predicated upon 42 U.S.C. § 1983 which authorizes actions to redress the deprivation, under color of state law, of rights, privileges, and immunities secured by the Constitution and laws of the United States, and 42 U.S.C. § 1988, which authorize the award of attorney's fees.

10. This is also a claim under Section 504 of the Rehabilitation Act of 1973 which authorizes actions to redress discrimination based on handicaps, and upon Title II of the Americans With Disabilities Act of 1990 and 42 U.S.C. § 12131.

11. This is also a claim for damages pursuant to the Florida Wrongful Death Act, § 768.16, et seq., Florida Statutes for the wrongful death of James Rush.

12. This Court has jurisdiction over the state law claims under the doctrine of supplemental jurisdiction, 28 U.S.C. § 1367(a).

13. All of the actions, omissions and events complained of herein took or take place in the County of Washington, State of Florida, and within the venue of this Court.

14. Notice has been served pursuant to § 768.28, Florida Statutes, and all other conditions precedent have been satisfied or waived.

## Parties

15. JACQUELINE FINN is the duly appointed Personal Representative of the Estate of JAMES PETER RUSH, and is presently serving in such capacity and is entitled to maintain this action. The beneficiaries of this wrongful death claim are Jacqueline Finn, decedent's niece and Hugh S. Rush, decedent's nephew.

16. Defendant Cpl. JONATHAN RACKARD, at all times material hereto was acting under color of law and within the scope of his employment as a Deputy Sheriff of Washington County, Florida. He was a supervisor of Defendant STONE and is sued in his individual and supervisory capacity.

17. Defendant Dep. FRANK STONE, at all times material hereto, was acting under color of law and within the scope of his employment as a Deputy Sheriff of Washington County, Florida. He is sued in his individual capacity.

18. Defendant, BOBBY HADDOCK, was and is the constitutionally elected Sheriff of Washington County, Florida, and was the chief jailor and lawful custodian of the decedent from the time of his arrest until his death. He is sued in his capacity as Sheriff and individually as supervisor of Defendants RACKARD and STONE.

## Common Allegations of Fact

19. On or about January 23, 2008, at about 12:45 a.m., James Peter Rush, Plaintiff's decedent, who resided at 1865 Kent Road, Chipley, Florida, Washington County, Florida, called 911 to ask to have an officer come out and check on him.

20. Mr. Rush, then 79 years old, suffered from Chronic Obstructive Pulmonary Disease (COPD), which makes it difficult to process oxygen well.

21. Mr. Rush also suffered from anxiety when his breathing problem worsened.

22. Mr. Rush had an appointment with his medical doctor at 8:00 that morning.

23. Although persons with COPD may live with that condition for many years, Mr. Rush needed constant access to oxygen to survive.

24. In the early morning hours of January 23, 2008, Mr. Rush was fearful and confused and called 911 repeatedly, stating he did have an emergency but apparently unable to articulate the nature of the emergency to the 911 Operator.

25.  Although Mr. Rush initially complained of a suspected petit theft and also stated he needed someone to talk to, he also expressed a fear that he might be found dead on the floor the next morning and wanted someone to check on him.

26. Mr. Rush's elderly brother, Edward Rush, lived nearby, but was ill.

27. Mr. Rush could have relied on his brother Edward for help but he was reluctant to do so since Edward was sick in bed at the time.

28. Mr. Rush reasonably relied on the agreement of Sheriff's officers to conduct a well-being check on him in lieu of seeking help from others.

29. Defendant Sheriff's Corporal Jonathan Rackard undertook to make a well-being check on Mr. Rush and purported to conduct the check.

30. Defendant Rackard necessarily observed that Mr. Rush used a cane to walk and was dependent on oxygen canisters that were in abundance at his home.

31. Despite clear indicators Mr. Rush was suffering a health crisis, Defendant Rackard did not call for medical services, transport Mr. Rush to a medical facility, contact family members or make any meaningful inquiry into Mr. Rush's health or request anyone else to do so but simply scolded Mr. Rush about calling 911 and left.

32. James Rush, still fearful and confused, and in reliance on the offer of help by law enforcement continued to call 911.

33. Defendant Rackard and the 911 Operator both became annoyed with Mr. Rush for his repeated calls and threatened him with arrest if he continued to call 911.

34. Defendant Rackard suffered from poor anger control and tended to make rash and punitive decisions when angry and Defendant Haddock was aware of this.

35. Subsequently, Mr. Rush made additional calls to 911 and Defendant Rackard instructed Defendant Stone to go out and arrest Mr. Rush.

36. Defendant Rackard did not share information with Stone about decedent's health condition or comments Mr. Rush made about fearing he would be found dead, nor did he inform the Jail staff to prepare them for Mr. Rush's fragile state of health.

37. By his deliberate indifference to Mr. Rush's fragile state of health, Defendant Rackard set in motion a series of acts that resulted in the violation of Mr. Rush's constitutional rights and his suffering and death.

38. When Defendant Stone arrived at decedent's home, Mr. Rush was weak and out of breath and could barely rise to his feet so that Stone had to summon additional help to get decedent into his patrol car.

39. Though Mr. Rush was weak, ill and suffering a disability, Defendant Stone did not seek medical assistance or transport Mr. Rush to a medical facility but rather placed Mr. Rush in his patrol car and took him to the Washington County Jail.

40. Defendant Stone did not call ahead to alert the Jail staff, to prepare them for the fragile state of Mr. Rush's health and the need for medical care and monitoring.

41. From the time of Defendant Stone's arrival at decedent's home until he reached the Washington County Jail, James Rush was clearly in distress.

42. During the time James Rush was in Defendant Stone's patrol car, he was denied access to his oxygen tank which had been placed in the trunk.

43. Mr. Rush was taken into the Washington County Jail, weakened by lack of oxygen, supported by officers on each side, and was placed in a holding cell around 7:00 a.m.

44. After the door of the holding cell was closed on James Rush, jail personnel were lax in the supervision and monitoring of his cell.

45. At one point, James Rush managed to walk to the cell door, stood at the door, and tried to get the attention of jail personnel but no one came to his aid.

46. At 07:24 or 07:25 a.m., the booking officer noticed that decedent "was leaning sideways and his mouth was moving."

47. James Rush was unresponsive to the booking officer's call and the officer went to find a nurse to undertake resuscitation efforts.

48. After some delay an Automated External Defibrillator (AED) was brought to the cell but was either used improperly or had been improperly tested or maintained.

49. Decedent was taken by EMTs to Northwest Florida Hospital at around 7:47 a.m. where he subsequently was pronounced dead.

50. Defendant Haddock subsequently inquired upon the death and was made aware of its circumstances but took no action to correct or discipline any employee.

51. Defendant Haddock encouraged, condoned, acquiesced in, tolerated, ratified, or failed to remedy, the wrongful acts of his subordinates.

52. Defendant Haddock delegated policy making authority to Defendant Rackard without adequate training to respond to the events that led to decedent's death.

53. As a direct, proximate and foreseeable result of the egregious wrongful acts of the Defendants, as set forth above, decedent suffered severe physical and emotional injuries and mental and physical pain and suffering, and ultimately, death.

## Causes of Action

### COUNT I: Failure to Treat in Violation of the Fourteenth Amendment Pursuant to 42 U.S.C. § 1983 against All Defendants

54. Plaintiff re-alleges the Common Allegations, as though fully set forth herein.

55. This is an action for violation of the Fourteenth Amendment to the U.S. Constitution against all Defendants.

56. Defendants, individually and cumulatively, were aware of facts that gave rise to an inference of risk of serious harm or death, and reasonably drew that inference.

57. Alternatively, Defendants employed a policy, custom, or practice that resulted in deliberate indifference to the serious medical needs of Plaintiff's decedent.

58. Defendants Rackard and Stone had actual notice of Mr. Rush's medical condition and Defendant Haddock had constructive notice.

59. Defendants, through the actions described above, caused decedent to be subjected to the deprivation of rights, privileges and immunities secured by the Constitution and the laws of the United States, including:

    a. The right not to be subjected to cruel, unusual, and excessive punishment;

    b. The right to have serious medical needs addressed in a timely manner;

    c. State created rights enforceable under the Fourteenth Amendment including Florida statutory protections and those fundamental rights to due process, liberty, and life guaranteed by the Constitution of the State of Florida.

60. Defendants were deliberately indifferent and recklessly disregarded Mr. Rush's medical condition by:

    a. Failing to provide care for Mr. Rush's serious and deteriorating health condition prior to and at arrest and maintaining a policy of failing to provide such care;

    b. Failing to investigate Mr. Rush's health condition, including failure to contact family members for information and maintaining a policy of such failure;

    c. Failing to communicate to others Mr. Rush's fragile state of health and maintaining a policy of failing to so communicate;

    d. Failing to prepare for the intake of a person in a serious and deteriorating health condition and maintaining a policy of failing to so prepare;

    e. Failing to monitor and supervise Mr. Rush's holding cell and maintaining a policy of failing to so monitor and supervise;

    f. Failing to take Mr. Rush to a medical facility for monitoring and care for his serious health condition at arrest and maintaining a policy of such failure;

    g. Failing to provide timely, appropriate and sufficient care at the Jail and maintaining a policy of such failure.

61. As a direct, proximate and foreseeable result of the Constitutional violations as set forth above, decedent suffered severe physical and emotional injuries and mental and physical pain and suffering, and ultimately, death.

62. At all times material hereto, Defendants reasonably knew that failure to provide adequate medical care would result in a substantial risk to Mr. Rush.

63. The medical services provided to James Rush were so cursory and inadequate as to amount to no medical care at all.

64. Defendant Haddock was and is responsible for the policies, practices, procedures, customs, and training, which govern medical care in the Washington County Jail.

65. At all times material hereto, the Defendants were acting in conformity with, or as a direct result of, the established policies, practices, procedures, customs, and training, of Defendant Sheriff Bobby Haddock.

66. Defendants' failures, alleged above, are attributable to the deliberately indifferent policies, practices, customs, and training, of Defendant Haddock.

67. Permitting life-threatening conditions to continue unchecked for non-medical reasons was a pervasive practice, which exhibits deliberate indifference to the serious medical needs of arrestees.

68. Defendants in their acts and omissions evinced

    a. subjective knowledge of a risk of serious harm;

    b. disregard of that risk;

    c. conduct that is more than mere negligence.

    Such acts and omissions constitute deliberate indifference.

69. Defendants' reckless, callous, or deliberate indifference directly, proximately, cumulatively, and jointly and severally caused Plaintiff's damages as alleged above.

70. Plaintiff has been forced to retain counsel to represent her to vindicate the rights of the Estate. Pursuant to the provisions of 42 U.S.C. Section 1988, Plaintiff is

entitled to an award of reasonable attorney's fees and costs.

WHEREFORE, Plaintiff prays for judgment as set forth below.

### COUNT II:  Violation Of § 504 of the Rehabilitation Act Of 1973 against Defendant Haddock

71. Plaintiff re-alleges the Common Allegations, as though fully set forth herein.

72. This is a claim for discrimination against the handicapped in violation of § 504 of the Rehabilitation Act of 1973, 29 U.S.C. §794, which provides in relevant part:

> No otherwise qualified individual with handicaps in the United States, as defined in Section 706 (7) of this title, shall, solely by reason of her or his handicap, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program receiving Federal financial assistance. . .

73. Plaintiff's decedent was a handicapped person as defined by 29 U.S.C. §706(7)(B).

74. Defendant Haddock receives, and at all times material to this action, received federal financial assistance and received such assistance for his jail.

75. Plaintiff's decedent was an "otherwise qualified individual" for purposes of § 504 of the Rehabilitation Act of 1973.

76. Plaintiff's decedent was a person with disabilities that prevented him from benefitting from services and programs, including safe custody, available to other inmates, but with reasonable accommodation, available to Defendant, he could have benefitted from those programs and services.

77. Plaintiff's decedent could have benefitted from special care and monitoring for his breathing disorder and for the anxiety caused by his serious illness.

11

78. Defendant's intentional refusal to accommodate the needs of Plaintiff's decedent by failing to provide special care or monitoring violated the Rehabilitation Act.

79. As a consequence of Defendant's failure to accommodate Plaintiff's decedent, Plaintiff's decedent suffered pain, disability, organ failure, and death. Plaintiff is entitled to damages.

80. Plaintiff has been forced to retain counsel to represent her to vindicate the rights of the Estate and is entitled to an award of reasonable attorney's fees and costs.

WHEREFORE, Plaintiff prays for judgment as set forth below.

### COUNT III: Violation of the Americans with Disabilities Act against Defendant Haddock

81. This is a claim pursuant to Title II of the Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12131-12165.

82. Plaintiff's decedent suffered a disability as that term is defined by 42 U.S.C. § 12102(2).

83. Section 202 of the Act, 42 U.S.C. § 12132 provides that:

> Subject to the provisions of this subchapter, no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.

84. Defendant is covered by the provisions of the Americans with Disabilities Act (ADA).

85. Plaintiff's decedent was a qualified individual within the meaning of the ADA in that, with or without reasonable modifications to rules, policies, or practices, the

12

removal of architectural, communication, or transportation barriers, or the provision of auxiliary aids and services, they meet the essential eligibility requirements for the receipt of services and participation in programs and activities offered by the Defendant Sheriff Bobby Haddock.

86. Plaintiff's decedent could have benefitted from special care and monitoring for his breathing disorder and for the anxiety caused by his serious illness.

87. Defendant's intentional refusal to accommodate the needs of Plaintiff's decedent by failing to provide special care or monitoring violated the ADA.

88. As a consequence of Defendant's failure to accommodate Plaintiff's decedent, Plaintiff's decedent suffered pain, disability, organ failure, and death. Plaintiff is entitled to damages.

89. Plaintiff has been forced to retain counsel to represent her to vindicate the rights of the Estate and is entitled to an award of reasonable attorney's fees and costs.

WHEREFORE, Plaintiff prays for judgment as set forth below.

### COUNT IV: Negligent Undertaking as to Defendant Haddock

90. Plaintiff re-alleges the Common Allegations, as though fully set forth herein.

91. Alternatively, Defendant Haddock is liable to Plaintiff for negligent undertaking.

92. Under § 768.28(9)(a) and § 30.07, Florida Statutes, Defendant Haddock is responsible for acts of his employees in the course and scope of their employment.

93. Plaintiff brings this action as Personal Representative pursuant to and authorized by the Florida Wrongful Death Act, § 768.16 et seq., Florida Statutes, on behalf of and for the benefit of decedent's Estate.

94. A law enforcement officer's decision to undertake to render aid to a person is accompanied by a corresponding duty to exercise reasonable care.

95. Any person or entity that voluntarily undertakes a duty not otherwise owed assumes an obligation to discharge that duty non-negligently.

96. At the promise of a wellness check by Defendant Haddock, through his deputies acting in the execution of their duties, James Rush relied on that promise and did not insist that his elderly brother or his neighbors come over and check on him.

97. The deputies breached their duty to the decedent and subjected him to danger of injury or death when they negligently failed to use reasonable care and, in light of the information available to them or easily discovered, they defied all manner of common sense and did not immediately seek medical care for the decedent.

98. Specifically, the defendants failed to act on clear indicators that Plaintiff's decedent was suffering from a serious medical condition.

99. As a direct and proximate result of Defendant Haddock's breach of duty to the decedent, Plaintiff's decedent suffered injury and death as described above.

WHEREFORE, Plaintiff prays for judgment as set forth below.

**COUNT V: Negligent Care of a Person in Custody as to Defendant Haddock**

100. Plaintiff re-alleges the Common Allegations, as though fully set forth herein.

101. Alternatively, Defendant Haddock is liable to Plaintiff for the negligent care of a person in his care and custody.

102. Under § 768.28(9)(a) and § 30.07, Florida Statutes, Defendant Haddock is responsible for employees' acts in the course and scope of their employment.

103. Plaintiff brings this action as Personal Representative pursuant to and authorized by the Florida Wrongful Death Act, § 768.16 et seq., Florida Statutes, on behalf of and for the benefit of decedent's Estate.

104. As Sheriff of Washington County, Defendant Haddock had a duty to James Rush, as a person in his custody, entirely dependent on Defendant Haddock for necessary medical care to save Mr. Rush's life.

105. At the arrest of James Rush by Defendant Haddock, through his deputies acting in the execution of their duties, Defendant Haddock assumed a special custodial relationship to James Rush and a duty for his reasonable care.

106. Defendant Haddock breached his duty of care in failing to adequately supervise, train, discipline or terminate his employees in the exercise of their duties to prevent the suffering and death of James Rush, which breach amounted to jailor malpractice.

107. Plaintiff is entitled to recover compensation from defendant Haddock for the acts and omissions of the individual defendants and the policies, practices, and customs as alleged in the Common Allegations and in Count I of this Complaint, which were carried out in such a fashion as to demonstrate at least negligence.

108. Defendant Haddock or his employees acting in the course and scope of their employment, having knowledge that the decedent was ill and confused, breached their duties owed to the decedent in one or more of the following ways:

    a. Failing to act on Mr. Rush's symptoms of confusion, incoherence, unsteadiness, and weakness, by preparing for and providing care;

    b. Treating decedent cruelly, denying him care; failing to contact family members to inquire further about his patently serious medical condition;

    c. Failing to timely transport decedent to a properly staffed and equipped medical facility for treatment of a serious medical condition;

    d. Failing to act promptly and effectively in rendering adequate emergency care and treatment to the decedent and to timely summon medical intervention;

    e. Negligently screening, hiring, supervising, training, disciplining, and retaining his officers and employees involved in the incarceration and custody of the deceased;

    f. Failing to follow normal and accepted corrections practices and procedures relating to the safe care of inmates.

109. As a direct and proximate result of Defendant Haddock's breach of duty to the decedent, Plaintiff's decedent suffered injury and death as described above.

    WHEREFORE, Plaintiff prays for judgment as set forth below.

### COUNT VI: Neglect of a Vulnerable Adult as to Defendant Haddock

110. Plaintiff re-alleges the Common Allegations, as though fully set forth herein.

111. Plaintiff is entitled to relief against Defendant Haddock in his official capacity under the Adult Protective Services Act, § 415.1111 Florida Statutes in that decedent met the definition of a "vulnerable adult."

112. Plaintiff's decedent was an adult whose ability to perform the normal activities of daily living or to provide for his own care was impaired due to a mental and long-term physical disability and the infirmities of aging.

113. Defendant Haddock, his agents and employees, in taking James Rush into custody, assumed the responsibility for a caregiver relationship, involving the regular and frequent care of Rush, or the provision of services on a temporary basis.

114. Defendant had a duty to avoid acts or omissions that caused significant impairment to decedent's physical health.

115. Defendant had a duty of care to decedent to provide care, supervision and services necessary to maintain his health, including medicine, supervision, and medical services, which a prudent person would consider necessary for a vulnerable adult.

116. Defendant, his agents or employees, breached that duty of care by neglect in careless actions that could reasonably be expected to cause serious physical injury or a substantial risk of death, and by abusive acts or omissions.

117. Defendant Haddock, his agents and employees, acting in the course and scope of their employment, though having knowledge that the decedent was ill and confused, breached their duties owed to the decedent in one or more of the following ways:

    a. Failing to act on Mr. Rush's symptoms of confusion, incoherence, unsteadiness, and weakness;

    b. Treating decedent cruelly, denying him care; failing to contact family members to inquire about his patently serious medical condition;

    c. Failing to timely transport decedent to a properly staffed and equipped medical facility for treatment of a serious medical condition;

    d. Failing to act promptly, properly and effectively in rendering adequate and proper emergency care and treatment to the decedent and to timely summon medical intervention;

    e. Failing to properly hire, supervise and discipline his officers and employees involved in the incarceration and care of the deceased;

    f. Failing to follow normal and accepted corrections practices and procedures relating to the safe care of inmates.

118. As a direct and proximate result of Defendant Haddock's breach of duty to the decedent, Plaintiff's decedent suffered injury and death as described above.

119. Pursuant to § 415.1111, Florida Statutes, Plaintiff is entitled to actual and punitive damages from Defendants, as well as attorneys' fees and costs.

WHEREFORE, plaintiffs pray that this Court enter judgment as noted below.

### **Prayer for Relief**

WHEREFORE, the Plaintiff seeks judgment as follows:

    A. Compensatory damages against each of the defendants herein;

B. Punitive damages against defendants sued individually;

C. Pre-judgment interest on any economic losses and post-judgment interest;

D. Attorney's fees pursuant to 42 U.S.C. §§ 1988 and 12205 and costs of litigation;

E. A trial by jury on all issues so triable;

F. Such further relief as the Court deems just and proper.

Respectfully Submitted,

*s/James V. Cook*
JAMES V. COOK
Florida Bar No. 966843
Law Office of James Cook
314 West Jefferson Street
Tallahassee, FL 32301
Fax: 850 561-0836

Attorney for Plaintiff